UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS RALPH JACKSON,

Plaintiff,

v.

CRAIG JONES,

Defendant.

Case No. 2:25-cv-12908
District Judge Brandy R. McMillion
Magistrate Judge Kimberly G. Altman

______________________________/

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION (ECF No. 15)**[1]

## I. Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Thomas Ralph Jackson, proceeding *pro se*, filed a complaint against Craig Jones alleging violations of his constitutional rights while incarcerated. (ECF No. 1). At issue is Jackson's claim that Jones violated the Eighth Amendment multiple times by shining a flashlight into Jackson's cell, causing eye damage. Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned. (ECF No. 16).

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

Before the Court is Jones' motion for summary judgment on the grounds that Jackson has not fully exhausted his administrative remedies as to all of the alleged incidents involving a flashlight. (ECF No. 15). Jackson has responded. (ECF No. 18). Jones has not filed a reply, and the time for doing so has passed. For the reasons discussed below, the undersigned RECOMMENDS that Jones' motion be DENIED.

## II. Background

In his complaint, Jackson alleges that on September 6, 2022, while he was applying his prescription eye ointment in his cell at Macomb Correctional Facility, Jones, a corrections officer, approached his cell window. (ECF No. 1, PageID.3). Jackson says that Jones shined a high intensity flashlight through the window onto Jackson's face. (*Id.*). According to Jackson, Jones walked away but returned seconds later, pointing the flashlight into Jackson's eyes. (*Id.*). Jackson claims that he instantly felt pain in his eyes, experienced a headache, had blind spots in his vision, and suffered from disorientation and an increased heart rate. (*Id.*). He then walked out of the cell and asked Jones, "What was that about?" (*Id.*). Jones explained that he was checking to see what Jackson was doing. (*Id.*). Jackson informed Jones that he was "being monitored for suspected glaucoma," and suffered from "a chronic dry-eye condition," which caused light sensitivity issues.

(*Id.*, PageID.4). Jackson asked Jones not to shine the flashlight into his eyes again. (*Id.*).

Jackson claims that on September 8, 2022, Jones again approached his cell window. (*Id.*). Again, Jones pointed the flashlight into Jackson's eyes. (*Id.*). According to Jackson, Jones shined the flashlight into Jackson's eyes on 13 additional occasions from September 8, 2022, to April 15, 2023. (*Id.*).

Jackson filed his complaint on September 12, 2025, bringing an Eighth Amendment claim against Jones for damaging Jackson's eyes with the flashlight. (*Id.*, PageID.6).[2]

## III. Legal Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

---

[2] Jackson also brought a claim against Jones for denying him a meal on October 2, 2022. (ECF No. 1, PageID.5). The district court dismissed this claim for failure to state a claim. (ECF No. 6, PageID.25).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citation omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Jackson is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (citation modified).

## IV. Discussion

### A. Exhaustion of Administrative Remedies

#### 1. Standard

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (citations omitted). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to

exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

2. MDOC's Grievance Process

The Michigan Department of Corrections (MDOC) has established a three-step process to review and resolve prisoner grievances. "Under the [MDOC's] procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007). Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Under MDOC PD 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue

being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130 ¶ Y (underscoring omitted). (ECF No. 15-2, PageID.77). "The grievance process is exhausted once the final response is issued in Step III." *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

3. Claims Covered by the Grievances

Jones argues that Jackson has only exhausted 6 of the 14 alleged flashlight-shining instances. (ECF No. 15, PageID.68). In response, Jackson contends that his grievances exhausted his Eighth Amendment claim arising from all the flashlight-shining incidents[3] under the continuing violation doctrine.

In support of Jones' motion to dismiss, he attached Jackson's Step III Grievance Report. (ECF No. 15-3). The report includes all grievances filed by Jackson from January 1, 2019, to December 3, 2025, that were either denied or rejected through the final step of the grievance process. (*Id.*, PageID.83-89). The report documents 13 grievances filed by Jackson, 7 of which pertain to the alleged

[3] In his response to Jones' motion for summary judgment, Jackson argues that 75 instances of Jones shining the flashlight were exhausted under the continuing violations doctrine, specifically noting that 70 incidents occurred from October 4, 2022, to April 15, 2023. (ECF No. 18, PageID.174). However, in his complaint, Jackson alleged that only 14 instances occurred from September 8, 2022, to April 15, 2023. (ECF No. 1, PageID.4).

flashlight-shining incidents. (*Id.*, PageID.124-159). The rejections of each grievance were upheld at Steps II and III. (*Id.*, PageID.121-123, 127-129, 133-135, 139-141,145-147,151-153, 156-158).

Jackson complained in Step I grievances that Jones shined a flashlight at Jackson's eyes on September 8, 2022 (*Id.*, PageID.142), September 9, 2022 (*Id.*, PageID.136), September 16, 2022 (*Id.*, PageID.124), September 17, 2022 (*Id.*, PageID.130), September 30, 2022 (*Id.*, PageID.148), October 1, 2022, at 2:40 a.m. (*Id.*, PageID.154), and October 1, 2022, at 3:35 a.m. (*Id.*, PageID.159). The Step I grievances were rejected for the following reasons: vagueness (*Id.*, PageID.144), including more than one issue (*Id.*, PageID.126, 132, 138), being a duplicate of another grievance (*Id.*, PageID.149, 155), and untimeliness (*Id.*, PageID.160).

Jones argues that Jackson's claims arising out of the instances not mentioned in the grievances should be dismissed for lack of proper exhaustion. (ECF No. 15, PageID.68-69). Jackson agrees that he properly exhausted seven of the flashlight-shining instances. (ECF No. 18, PageID.170). Although the other incidents "were either not pursued past Step I or were not grieved," Jackson contends that the entirety of his Eighth Amendment claim is exhausted under the continuing violations doctrine. (*Id.*).

In the context of exhaustion under the PLRA, the Sixth Circuit held that "[w]here there is one, continuing harm or a single course of conduct (which can

lead to discrete incidents of harm), filing repeat grievances is unnecessary." *Morgan v. Trierweiler*, 67 F.4th 362, 369-70 (6th Cir. 2023) (quotation marks omitted) (quoting *Siggers v. Campbell*, 652 F.3d 681, 692-93 (6th Cir. 2011)). In *Morgan*, the Sixth Circuit considered whether a prisoner exhausted his free exercise claim based on the denial of Halal meals when his grievance listed a date range for when the alleged constitutional violation occurred and his complaint alleged that prison officials continued to deny him Halal meals after the specified date range. *Id.* The Sixth Circuit concluded that each meal denial was not a discrete event that required a separate grievance. *Id.* at 370-71. Because the prisoner's challenge attempted to resolve a single course of conduct, his grievance exhausted his constitutional claim which encompassed conduct after he filed the grievance. *Id.* at 368.

Unlike in *Morgan*, the Sixth Circuit in *Siggers* found the continuing violations doctrine did not apply when the prisoner "was not suffering from one, continuing harm and government indifference." *Siggers*, 652 F.3d at 693. The Sixth Circuit affirmed the district court's dismissal of the prisoner's claim which was premised on the prison's rejection of several pieces of mail over an eight-month period. *Id.* The prisoner's claims were not exhausted under the PLRA because his single grievance concerning a mail rejection did not "put the defendants on notice of a continuing violation" for other rejected mail when the

pieces of mail were rejected under "separate facts and circumstances—and even different policy directives." *Id.* at 688-89, 692-93.

Here, Jackson brings an Eighth Amendment violation based on the 14 alleged incidents from September 8, 2022, to April 15, 2023. (ECF No. 1, PageID.4). Jackson's seven grievances detailed the first seven of the incidents where Jones directed a flashlight into Jackson's eyes. (ECF No. 15-3, PageID.124, 130, 136, 142, 148, 154, 159). "[E]ven though each incident was discrete," the alleged harm for all of the instances was the eye damage based on Jones' deliberate indifference to Jackson's medical needs. *Morgan*, 67 F.4th at 370. "That is, the same condition of confinement of which he had been complaining continued." *Id.* (quoting *Johnson v. Johnson*, 385 F.3d 503, 520 (5th Cir. 2004) (quotation marks omitted). Even though Jackson asserts that the alleged constitutional violation continued seven additional times until April 15, 2023, each instance was not a discrete event that required a separate grievance because they all occurred under the same facts and circumstances. *Id.* at 370-71.

Further, two of Jackson's Step I grievances were rejected for being duplicates of another grievance, despite setting out different days and times that the incidents occurred. (*Id.*, PageID.149, 155). Thus, even the grievance coordinator who reviewed Jackson's Step I grievances recognized that the instances were part of a single course of conduct. *Id.* at 370.

Because Jackson's grievances and complaint reflect an attempt to resolve a single course of unconstitutional conduct, his grievances exhausted the entirety of his constitutional claim. *Id.* at 368. Put another way, Jones has not carried his burden to show that Jackson failed to fully exhaust his administrative remedies as a matter of law.

V. Conclusion

For the reasons discussed above, the undersigned RECOMMENDS that Jones' motion for summary judgment (ECF No. 15) be DENIED. If this recommendation is adopted, the undersigned will enter a scheduling order setting dates for discovery and dispositive motions.

Dated: September 9, 2026
Detroit, Michigan

s/Kimberly G. Altman
KIMBERLY G. ALTMAN
United States Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 9, 2026.

s/Dru Jennings
DRU JENNINGS
Case Manager